32 1245
45 554

No. 7613.

HENRIETTA DAVIDSON ET AL. VS. CITY OF NEW ORLEANS.

1. So far as the object of a suit is to ascertain the nature and effect of the judgment of a certain court and to regulate the extent to which that judgment should be held entitled to receive execution, the court itself which rendered the judgment, is the only one which can entertain jurisdiction of the action.
2. Causes affecting the execution of a judgment and requiring a limitation or restraint of that execution, when those causes have arisen after rendition of the final decree of this Court, are cognizable by the lower court.
3. The plea of *Res judicata* cannot be opposed to an action of which the very object is the interpretation and regulation of the judgment pleaded in bar.

APPEAL from the Third District Court, parish of Orleans. *Monroe, J.*

B. R. Forman and Ogden & Hill for Plaintiffs and Appellants.

Sam. P. Blanc, Assistant City Attorney, and Lacey & Butler for Defendant and Appellee.

The opinion of the Court was delivered by

FENNER, J. This case arises under the drainage laws and comes before us now exclusively upon exceptions, for the proper determination of which it is necessary to state the substance of a long and complicated petition.

The averments are substantially, and so far as necessary to be stated for our present purpose, as follows :

That by Act 165 of 1858 the Legislature established certain Draining Districts for the purpose of leveeing, draining and reclaiming the swamp lands therein situated, and created Boards of commissioners for each of said districts and defined their powers and duties, amongst

80

which were the duty to make plans designating the drainage work to be done, the limits of subdivisions of property within the districts, the names of the proprietors, the probable cost of the work proposed, and the probable time within which the work would be completed ; that the said plans, when completed, were to be deposited in the office of the Recorder of Mortgages and were to be published ; that in 1859, such plans were deposited and published, and the cost therein estimated was $350,000 for the first drainage district, and the time fixed for completion of the work was three years ; that after such publication, the Boards of commissioners were authorized to levy such uniform assessments upon the superficial square foot of lands within each district as may be necessary to defray the work, not exceeding $350,000; and that the Board for the first drainage district did assess a tax of 3 3-10 mills per superficial foot on the lands of that district ; that more than $350,000 have been collected in said district, and that, though more than twenty years have elapsed since the work was begun, the district has not been drained ; that, in 1871, the City of New Orleans, having succeeded to the rights and powers of the several Boards of Draining Commissioners, filed tableaux of assessments in the Seventh District Court in a proceeding (authorized by Act 57 of 1861) entitled : " In the matter of the commissioners of the first draining district, praying the homologation of the assessment roll, etc. ; " that the petition was rejected in that Court, but that, on appeal, the Supreme Court reversed that judgment and decreed that said roll be homologated, and that this homologation shall operate as a judgment against the property described, and also against the owner or owners thereof, with ten per cent. additional for costs and counsel fees ; that the only reason, basis or consideration for said assessment or the judgment thereon, was that the land had been, or should be, drained, and that, when drained, the land would be benefitted thereby so as to be increased in value at least the cost of the work or amount of the tax assessed ; that since the judgment aforesaid, the City of New Orleans, now lawfully vested with exclusive control of all the drainage work, has entirely abandoned it, and has removed and advertised for sale the dredge-boats and machinery employed in the work ; that the Legislature, recognizing that a certain portion of the lands embraced in the drainage districts had not been, and would not be, drained, had passed Act No. 48 of 1877, which repealed all drainage laws providing for the drainage of the lands lying within the limits therein defined, and cancelled all judgments and legal proceedings creating, or seeking to create, liens for assessments for drainage of said lands ; that, by Act 67 of the extra session of 1877, it was further provided that no assessment or judgment for drainage should operate on any property except that assessed, or should be collected from that

property until benefitted to value of the assessment. The petition, in addition to these general allegations, specifically alleges that petitioners are owners of four hundred acres situated within the limits excluded from drainage by Act 48 of 1877, containing over 16,000,000 of superficial feet, upon which the assessment claimed would amount to more than $50,000, exceeding many fold the value of the property ; that it has not been drained, and that, so far from draining it, the city has made a ditch and thrown up banks of earth, by which the natural drainage is destroyed ; that to enforce the said assessment as a personal claim against them, would take, not only all their swamp property, but a great deal more besides ; that the city has recorded a large claim for drainage assessments as a privilege and mortgage upon the property of petitioners ; that the only consideration of the judgment and claim against them for drainage having entirely failed, it would be against equity and good conscience to enforce said judgment as a privilege against the lands, and still more as a personal judgment against them.

The petition contains various allegations charging the unconstitutionality of the laws under which the taxes are claimed and of the taxes, and charging sundry other matters not necessary to be here set out, and concludes with a prayer for injunction restraining the city from executing the judgment referred to, or from enforcing any privilege or mortgage against any lands of petitioners on account of any drainage claims in the first drainage district ; and for judgment perpetuating said injunction ; annulling the judgment complained of ; decreeing that the city has no lawful privilege or mortgage on property of petitioners for drainage ; ordering the erasure of all inscriptions of such privilege or mortgage, or, if such relief be denied, restricting the said draining claims and privileges to the property on which they are assessed, and decreeing them not to be a personal debt against them.

To this petition the defendant filed the following exceptions :

1st. To the jurisdiction of the Third District Court, on the ground that the cause fell within the exclusive jurisdiction of the Probate, or Second District Court.

2d. To the jurisdiction of the Court, on the additional ground that, the judgment sought to be annulled being a final judgment of the Supreme Court of the State affirmed by the Supreme Court of the United States, the said District Court had no jurisdiction to annul, or set it aside.

3d. *Res judicata.* Alleging that all the matters set forth had been determined by the aforesaid judgment of the Supreme Court.

4th. *No cause of action,* as to all matters (if any) not embraced within the plea of *res judicata,* and particularly the portion based on Act 48 of 1877—which is alleged to be in violation of Arts. 110 and 118

of the State Constitution of 1868, and of Section 10 Art. 1 of the Constitution of the United States.

The *first* exception above noted is now deprived of useful object since, under the Constitution of the present Civil District Court, both probate and ordinary jurisdiction are centred therein. We are of opinion, however, that so far as the object of the suit was to declare the effect of a judgment of the Third District Court, and to regulate the extent to which it should be held entitled to receive execution, such matters could be enquired of only in that Court. The object of the law in requiring the "payment" of judgments against successions to be " enforced " in the Probate Court, was simply to force judgment creditors, in common with others, into the *concursus* of distribution of the succession property ; but, in that *concursus*, the Probate Court would be compelled to give effect to the rights of the judgment creditor as determined by the Court which rendered the judgment, and was not vested with power to review its validity or to determine the effect of the judgment, or to decide whether or not it should be executed at all.

As to other relief sought in this action, it is clear that this exception could not prevail.

The *second* exception to the jurisdiction is also confined, in its scope, to the relief asked against the judgment and its execution.

Plaintiffs, in their brief, disclaim and abandon that portion of the prayer of their petition asking that the judgment of this Court be annulled—and we are, therefore, dispensed from considering here the question of the power of inferior courts to entertain actions of nullity of judgments of this Court.

Plaintiffs confine their relief, with reference to this judgment, to a demand to regulate and interpret the judgment and to restrain and limit its execution for causes occurring after its rendition.

Under articles 905 and 915 of the Code of Practice, it seems very clear that the jurisdiction of this Court with reference to its own judgments terminates with their rendition and finality, and that all matters touching their execution are remitted to the original cognizance of the inferior courts. Differences as to the effect or interpretation of such judgments equally find no forum for original assertion except in the same courts. It is easy to conceive that such differences may honestly arise ; and it is plain that cases may arise in which causes, occurring subsequently to the rendition of judgments, may render their execution illegal and inequitable and violative of rights not within the contemplation of the Court when the judgment was rendered, and not intended to be foreclosed thereby.

Examples are suggested of eviction of the vendee of an immovable after judgment against him for the price ; or eviction of a tenant, or

destruction of leased premises, after judgment for future rents ; and such examples might be easily multiplied.   Here would be failure of the only possible consideration of such judgments, and it could not be doubted that such failure would furnish just ground to enjoin their execution.

Similar failure of consideration is alleged in this case, and additional relief is asked not connected at all with the judgment.   We have no doubt that the causes of action are within the jurisdiction of the court *à quâ*.

The *third* exception of *res judicata* encounters three insuperable objections to its maintenance, viz :

1st.   The petition distinctly alleges that " the heirs of John Davidson " (who are parties plaintiff here) " were not parties to said proceeding in the late Seventh District Court, and that John Davidson was dead at the time."   There is nothing in the record to contradict this allegation, which must be taken as true, and eliminates a necessary element of the plea.

2nd.   The record and judgment pleaded as *res judicata* are not put in evidence in support of the plea and do not appear in the transscript, thus leaving us without any proper basis for a determination of the merits of the plea.

3rd.   The plea itself is a clear *petitio principii*.   The very questions at issue are, what are the meaning, effect and consideration of the judgment and whether the causes alleged are sufficient to justify the restraint or limitation of its execution.   It involves an illogical anachronism to say that these questions, arising upon, and after, the judgment, could have been determined by the judgment.   As to other relief sought in the petition, of course the plea has no application.

The *fourth* exception of no cause of action we shall not discuss at length, for the reason that we are desirous of avoiding the slightest trenching upon the merits of this important cause.

We are of opinion that the allegations of the petition, if established, present a case of great hardship and urgently demanding relief which could not be denied unless the stern estoppel of the thing adjudged has indeed operated the miraculous conversion, " *ex nigro, album, ex curvo, rectum.*"   It is certainly a case demanding an investigation and determination upon the entire merits.

In overruling the plea of *res judicata* as here presented, it is perhaps proper to say that we do not mean to debar the Court *à quâ* from considering it as a defense to the merits and giving the judgment pleaded such effect, for that purpose, as it may be found entitled to.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be annulled, avoided and reversed, that the exceptions of defendant be overruled, and the case remanded to be proceeded with according to law ; appellee paying costs of this appeal.